IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTIN A. OLIVER,

       Plaintiff,

v.

CITY OF BERKLEY, a Municipal
Corporation, the BERKLEY PUBLIC
SAFETY DEPARTMENT, BRUCE
HENDERLIGHT, and BRENT SMITH,
jointly and severally,

       Defendants.

No. 01-71689

HON. GEORGE CARAM STEEH
MAGISTRATE JUDGE SCHEER

FILED

FEB - 5 2003

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

---

**CAROL A. McNEILAGE (P28084)**
**JOSEPH P. McCARROLL (P28083)**
Attorneys for Plaintiff
27200 Lahser Road
Suite 200
P.O. Box 2207
Southfield, MI 48037-2207
(248)358-5180

**JAMES I. DeGRAZIA (P22853)**
Attorney for Defs. City of Berkley,
Berkley Public Safety Department
and Bruce Henderlight, only
4111 Andover Road, Suite 300E
Bloomfield Hills, MI 48302
(248) 433-2000

**MICHAEL D. RITENOUR (32485)**
Attorney for Def. Brent Smith
400 Galleria Office Centre
Suite 550
Southfield, MI 48034
(248) 353-4450



RECEIVED
FEB - 4 2003
CLERK'S OFFICE
U.S. DISTRICT COURT

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

    **NOW COMES** Plaintiff by and through her attorneys and in response to Defendants'

Motion for Summary Disposition states as follows:

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

1.      This action arises out of criminal sexual conduct committed by Officer Brent Smith during an arrest and booking of Plaintiff on May 3, 1998. This Officer is currently serving time on a conviction on a similar offense against another young woman victim.

2.      Admitted that Plaintiff signed a plea agreement which attempts to deprive all who sign it of their civil rights.

3.      Admitted that Defendants have already tried and failed on this same issue.

4.      Admitted that Defendants' initial Motion for Summary Judgment was denied by this Honorable Court, without prejudice, but with an extensive and comprehensive written opinion and order dated October 30, 2001. (Exhibit A)

5.      Admitted that Defendant has renewed its initial Motion, but denied that there is any new evidence that was not already available to Defendants at the time they filed their original motion.

6.      Admitted that Ms. Oliver contends that Officer Smith committed criminal sexual conduct during multiple searches actually made inside the police station, subsequent to her arrest.

7.      Denied that no other wrongdoing is at issue since wrongdoing of Chief Henderlight and the City of Berkely is also at issue.

8.      Admitted that claims involved all defendants.

9.      Denied that agency relationship "undergirds" all of plaintiff's claims.

10.     The federal claims also include a failure to supervise and defective policies of the named defendants.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

1

11.   Since the filing of the Complaint, specifics have been revealed during the multitude of depositions which specifics will be the subject of an amended complaint now that discovery is completed.

12.   Denied since Chief Henderlight and the City gave Officer Smith the badge, the gun and the opportunity to commit criminal sexual conduct in their failure to have an appropriate and clear policy for the arrest and search of female detainees and in their laizze faire attitude about sexual misconduct by City of Berkley police officers both inside and outside the police station.

13.   Denied that Officer Smith had no prior problems, but admitted that he was known as a "drunkhound" who made more arrests and wrote more tickets than any other officer in the department and thereby was annointed "Officer of the Year" which is an "honor" which has no established criteria.

14.   Denied in that a lack of field training and supervision,  an unclear and uncertain policy which allowed and encouraged officers to use their "discretion" in where and how they touched female detainees, the lack of supervision in the police station, the lack of a policy with respect to using the surveillance camera and maintaining the tapes, the atmosphere of sexual harassment including posting "cartoons" of female body parts on the department bulletin board, the "brushing off" of citizen complaints,  were all clear indications that an officer including Officer Smith might improperly touch a "suspect" under the guise of conducting a search and "get away with it."  Further, the City of Berkley and Chief Henderlight were aware that one-on-one contacts between male officers and female citizens are fraught with the potential for sexual misconduct by virtue of their departmental rule requiring a police officer to log the time and place a female was transported in a police car – a rule which Brent Smith was cited for violating.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

15.    Admitted that Officer Smith formerly worked in Meridian Township, but neither admitted nor denied as to his recommendation since no deposition of any officer from Meridian Township has ever been taken in this case.

16.    Admitted that Officer Smith testified he received a copy of the rules and regulations, but denied that they in no way authorize or condone improper touching of suspects or prisoners in that they are unclear, contradictory in content and leave decisions on how far to go in a search to the individual "discretion" of the officers as confirmed by the sworn testimony of these officers.

17.    Neither admitted nor denied and plaintiff leaves defendants to their proofs.

18.    In depositions that have been taken of two citizens of the City of Berkley it appears Officer Smith did exhibit a propensity for violence, but to date we have been unable to confirm the exact date of the incident.

19.    Admitted this contention was made in the original Complaint.

20.    Now that depositions have been taken plaintiff would welcome an opportunity to amend the Complaint to elaborate on these allegations since so much has been learned about the highly sexually charged atmosphere in the Berkley Police Station including ongoing incidents of sexual harassment of a female dispatcher who was subjected to watching a police officer masterbate to ejaculation into a cup in the police station in plain view.  This not only constitutes sexual harassment, it amounts to the crime of indecent exposure.  The policy or custom of condoning such activities, when combined with the lack of a clear, non-discretionary policy to protect women arrestees from an opportunity for sexual abuse and the lack of a supervisor on duty leaving a male officer alone in the station without supervision, led to and inextricably constituted the factual and legal *sine qua non* environment without which Brent Smith could not

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

exercised the power and authority to illegally and repeatedly search, assault and molest Kristin Oliver.

21.     Denied.

22.     At the time of the original pleading Berkley had not produced the internal documents that have since been produced including, but not limited to, General Order No. 15.

23.     See 22.

24.     Neither admitted nor denied and plaintiff leaves defendants to their proofs.

25.     Denied that none of the City's rules and regulations authorize a police officer to grope a suspect under the guise of a search. Since it is left to the individual officer's discretion (as testified to by each officer deposed) officers could assume they were "authorized" to do as they wished. Denied that the Department's rules and regulations are consistent with common practice of police departments. See Expert reports attached hereto. (Exhibits B & C)

26.     There is no doubt the failure amounts to "deliberate indifference". Even police officers testified under oath that Chief Henderlight was indifferent to what was happening around him. Attached hereto is a cartoon posted on the department bulletin board which indicates how officers viewed Chief Henderlight.   He was the little man in the big suit who saw "noth-ink." (Exhibit D)

27.     Denied. (See Amended Complaint, Count III Against All Defendants)

28.     Facts have been gained through discovery in this case which are so extreme as to amount to "deliberate indifference" and plaintiff is now prepared to amend the original Complaint to set forth those facts.

29.     The City of Berkley failed to train Officer Smith by Officer Smith's own testimony.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

4

30.     Denied that Chief Henderlight is entitled to the protection of the doctrine of qualified immunity.

31.     The policies of the City of Berkley show a deliberate indifference to the rights of women to the integrity of their own bodies.

32.     Denied.

33.     Admitted.  This matter has been previously ruled upon by this court in its Opinion and Order dated October 30, 2001.

WHEREFORE, Plaintiff respectfully asks this Honorable Court to deny Defendants' Renewed Motion for Summary Judgment and allow this case to proceed to trial.

KEPES, WINE & McNEILAGE, P.C.

By:     _Carol A. McNeilage_
CAROL A. McNEILAGE (P28084)
JOSEPH P. McCARROLL (P28083)
Attorneys for Plaintiff

DATED:  February 4, 2003

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTIN A. OLIVER,

       Plaintiff,

v.

CITY OF BERKLEY, a Municipal
Corporation, the BERKLEY PUBLIC
SAFETY DEPARTMENT, BRUCE
HENDERLIGHT, and BRENT SMITH,
jointly and severally,

       Defendants.

No. 01-71689
HON. GEORGE CARAM STEEH
MAGISTRATE JUDGE SCHEER

_____/

## BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

### CONCISE STATEMENT OF THE ISSUES PRESENTED

Per L.R. 7.1(c)(2), Plaintiff submits the following Concise Statement of the Issues Presented:

A.     Is the blanket release signed by Plaintiff enforceable?

B.     Whether the City of Berkley and Chief Bruce Henderlight can be held liable for the alleged deprivation of Plaintiff's constitutional rights of privacy and freedom from illegal search under the Fourth Amendment.

C.     Whether Director of Public Safety Bruce Henderlight is entitled to the protection of the Doctrine of Qualified Immunity from civil damages liability for alleged violation of Plaintiff's constitutional rights.

D.     Whether the City of Berkley, the Berkley Department of Public Safety, and Director of Public Safety Bruce Henderlight can be held liable to Plaintiff for alleged intentional infliction of emotional distress under state tort law.

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

i

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Pursuant to L.R. 7.1(c)(2), Plaintiff submits the following Statement of Controlling or Most Appropriate Authority for the Relief Sought:

Avery v. County of Burke, 660 F.2d 111, 114 (4th Cir. 1981); Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir. 1980), cert. denied, 449 U.S. 1016, 101 S. Ct. 577, 66 L. Ed. 2d 475 (1980);

Withers v. Levine, 615 F.2d 158, 161 (4th Cir. 1980), cert. denied, 449 U.S. 849, 66 L. Ed. 2d 59, 101 S. Ct. 136 (1980)

Canton v Harris, 489 U.S. 378 (1989)

Clemons v Morris, 830 F2d 193; 1987 US App LEXIS 13025

Coughlen v Coots, 5 F.3d 970, 973 (6th Cir. 1993)

DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189 (1989)

Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir. 1996)

Enertech Elec., Inc. v. Mahoning County Comm'r, 85 F.3d 257, 259 (6th Cir. 1996)

Friebis v. Kifer, 47 Fed. Appx. 699, 702-703 (2002)

Garner v Memphis Police Dept., 8 F.3d 358,364 (6th Cir. 1993)

Gazette v. City of Pontiac, 41 F.3d at 1065

Gibson v. City of Clarksville, 860 F. Supp. 450, 457-458 (1993)

Holmes v Allstate Insurance Company, 199 Mich App 710, 326 NW2d 616 (1982)

Kallstrom v. City of Columbus, 136 F.3d 1055, 1062-63 (1998)

Kinney v. City of Cleveland, 144 F. Supp. 2d 908, 918 (2001)

Long v Norris, 929 F2d 1111, 1115 (CA 6, 1991) cert. denied sub nom, Jones v Long, 502 US 863 (1991)

Mary M. v. City of Los Angeles, 54 Cal. 3d 202, 217-218 (1991)

Masters v. Crouch, 872 F.2d 1248, 1257 (CA 6, 1989), cert. denied sub nom Frey v Masters, 4983 US 977; 110 S Ct 503; 107 L Ed 2d 506 (1989)

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

Opinion and Order Granting In Part, And Denying In Part, Defendants' Motion For Summary
        Judgment dated October 30, 2001

<u>Pembaur v. City of Cincinnati</u>, 475 US 469 (1986)

<u>Procunier v Navarette</u>, 434 U.S. 555, 562 (1978)

<u>Warren v June's Mobile Home Village & Sales, Inc.</u>, 66 Mich App 386, 390, 239 NW2d 380
        (1976)

<u>Winningham v North Am. Resources Corp.</u>, 42 F.3d 981, 984 (6th Cir. 1994)

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

# TABLE OF CONTENTS

Index of Authorities..................................................................................................v

I.    Introduction..................................................................................................1

II.    Standard of Review........................................................................................1

III.    Statement of Facts........................................................................................2

IV.    Issues..........................................................................................................4

    A.    Is the Blanket Release Signed by Plaintiff Enforceable?.........................................4

    B.    Whether the City of Berkley and Chief Bruce Henderlight
can be held liable for the alleged deprivation of Plaintiff's
constitutional rights of privacy and freedom from illegal
search under the Fourth Amendment.......................................................8

    C.    Whether Director of Public Safety Bruce Henderlight is
entitled to the protection of the Doctrine of Qualified
Immunity from civil damages liability for alleged
violation of Plaintiff's constitutional rights............................................15

    D.    Whether the City of Berkley, the Berkley Department of
Public Safety, and Director of Public Safety Bruce Henderlight
can be held liable to Plaintiff for alleged intentional infliction
of emotional distress under state tort law.................................................21

V.    Conclusion..................................................................................................25

VI.    Relief Requested..........................................................................................25

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

## INDEX OF AUTHORITIES

**CASE LAW**                                                                        **PAGE**

Adden v. Middlebrooks,
    688 F.2d 1147 (7th Cir., 1982)......................................................10

Avery v. County of Burke,
    660 F.2d 111, 114 (4th Cir. 1981)................................................19

Booker v Brown & Williamson Tobacco Co.,
    879 F.2d 1304 (6th Cir. 1989)......................................................2

Burke v. Johnson,
    67 F.2d 276, 281 (6th Cir. 1999)....................................................4

Cain v. Darby's,
    [7 F.3d 377 (3d Cir., 1993) (in banc), cert. denied, 510 U.S. 1195 (1994).....................5

City of Canton v. Harris,
    489 U.S. 378, 392, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989)..............................15

Birmingham v. Gonzales,
    1998 U.S. Dist. LEXIS 1778........................................................15

Clements v. Logan,
    455 U.S. 942, 71 L. Ed. 2d 653, 102 S. Ct. 1435 (1982).................................11

Clemons v Morris,
    830 F2d 193; 1987 US App LEXIS 13025..............................................20

Coughlen v Coots,
    5 F.3d 970, 973 (6th Cir. 1993)..................................................4, 5, 6

Deitz v Wometco West Michigan TV,
    160 Mich App 367, 407 NW2d 649 (1987)...........................................24, 25

DeShaney v. Winnebago County Dep't of Social Services,
    489 U.S. 189 (1989)..............................................................13

Doe v. Claiborne County,
    103 F.3d 495 (6th Cir. 1996)................................................9, 13, 14, 20

Dufrin v Spreen,
    712 F2d 1084 (CA 6, 1983).......................................................10, 20

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

Enertech Elec., Inc. v. Mahoning County Comm'r,
    85 F.3d 257, 259 (6th Cir. 1996)................................................................2

FDIC v Alexander,
    78 F.3d 1103 (6th Cir. 1996).................................................................2

Foy v. City of Berea,
    58 F.3d 227, 233 (1995)......................................................................21

Frey v Masters,
    4983 US 977; 110 S Ct 503; 107 L Ed 2d 506 (1989)...................................10, 21

Friebis v. Kifer,
    47 Fed. Appx. 699, 702-703 (2002)..........................................................6

Frishett v State Farm Mutual Automobile Ins Co.,
    3 Mich App 688, 692, 143 MW2d 612 (1966, lv. den. 378 Mich 733 (1966)..............22

Garner v. Memphis Police Dept.,
    8 F.3d 358 (6th Cir. 1993)...................................................................25

Gayles v. City of Detroit,
    Wayne County Docket No. 01-60038...........................................................25

Gazette v. City of Pontiac,
    41 F.3d 1065...............................................................................8, 9, 14

Gibson v. City of Clarksville,
    860 F. Supp. 450 (1993)......................................................................14

Harlow v. Fitzgerald,
    457 U.S. 800, 818-19 (1982).................................................................21

Hicks v Frey,
    992 F.2d 1450, 1456-57 (6th Cir. 1993).................................................14, 20

Hill v. City of Cleveland,
    12 F.3d 575 (6th Cir. 1993)..................................................................5, 7

Hill v. McIntyre,
    884 F.2d 271(6th Cir. 1989).................................................................15

Holmes v Allstate Insurance Company,
    199 Mich App 710, 326 NW2d 616 (1982)......................................................21

Hubert v. Brown,
    1977 U.S. App. LEXIS 11025..................................................................10

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

Humes v. Gilless,
    154 F. Supp. 2d 1353 (2001)........................................................20

Jones v Long,
    502 US 863 (1991)..................................................................10

Kallstrom v. City of Columbus,
    136 F.3d 1055 (6th Cir. 1998)...............................................8, 13

Kinney v. City of Cleveland,
    144 F. Supp. 2d 908................................................................5

Livingstone v. North Belle Vernon Borough,
    91 F.3d 515........................................................................4, 5

Logan v. Shealy,
    660 F.2d 1007 (4th Cir. 1981)..........................................10, 11, 12

Long v Norris,
    929 F2d 1111 (CA 6, 1991).......................................................10

Manion v. Michigan Bd. of Medicine,
    765 F.2d 590, 594 n1 (6th Cir., 1985).........................................10

Margita v Diamond Mortgage Corporation,
    159 Mich App 181, 406 NW2d 268 (1987)........................................24

Mary M. v. City of Los Angeles,
    54 Cal. 3d 202 (1991)............................................................11

Masters v. Crouch,
    872 F.2d 1248 (CA 6, 1989)...................................................10, 21

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)................................................................2

Monell v. Department of Soc. Servs.,
    436 U.S. 658, 691 (1978).......................................................9, 12

Mosley v Federal Dep't Stores, Inc.,
    85 Mich App 333 NW2d 224 (1978).............................................22

Pembaur v. City of Cincinnati,
    475 US 469 (1986)................................................................20

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

People v Brent Smith,
    Oakland County 01-177388-FH...................................................................6, 7

Procunier v Navarette,
    434 U.S. 555 (1978)...................................................................................20

Redmond v. Baxley,
    475 F. Supp. 1111 (E.D. Mich. 1979)..........................................................10

Roberts v Auto Owners Insurance Company,
    422 Mich 594; 374 NW2d 905 (1985)..........................................................23

Robinson v. Twp. of Redford,
    48 Fed. Appx. 925 (6th Cir. 2002)...............................................................9

Ross v Burns,
    612 F2d 271 (CA 6, 1980)..........................................................................22

Sawabini, D.O. v Desenberg,
    143 Mich App 373 NW 2d 559 (1985)..........................................................24

Scott v. Moore,
    114 F.3d 51, 54 (CA 5, 1997).....................................................................9

Stamps v. City of Taylor,
    218 Mich. App. 626, 635; 554 N.W.2d 603 (1996)........................................7

Terry v. Ohio,
    (1968) 392 U.S. 1....................................................................................11

Tinetti v. Wittke,
    479 F. Supp. 486 (E.D. Wis. 1979), aff'd, 620 F.2d 160 (7th Cir. 1980)................11

Town of Newton v. Rumery,
    480 U.S. 386 (1987)............................................................................4, 5, 6

Turpin v. Mailet,
    619 F.2d 196, 202 (2d Cir. 1980), cert. denied,
    449 U.S. 1016, 101 S. Ct. 577, 66 L. Ed. 2d 475 (1980) ...................................20

Walton v. City of Southfield,
    995 F.2d 1331 (1993)...............................................................................14

Warren v June's Mobile Home Village & Sales, Inc.,
    66 Mich App 386; 239 NW2d 380 (1976).....................................................22

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

Watts v. Burkhart,
      978 F.2d 269 (1992)..................................................................10

Winningham v North Am. Resources Corp.,
      42 F.3d 981 (6th Cir. 1994).........................................................2

Withers v. Levine,
      615 F.2d 158 (4th Cir. 1980), cert. denied, 449 U.S. 849,
      66 L. Ed. 2d 59, 101 S. Ct. 136 (1980)..........................................20

Wood v. Strickland,
      420 U.S. 308, 321-22, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975)..............20


**COURT RULES and STATUTES**

42. U.S.C. § 1983..............................................................................*passim*

Fed. R. Civ. P. 56(c)(c)........................................................................1


**OTHER AUTHORITY**

Restatement of the Law, Torts,
      2d section 46..............................................................................22

Kreimer, Seth F., ARTICLE: RELEASES, REDRESS, AND POLICE
MISCONDUCT: REFLECTIONS ON AGREEMENTS TO
WAIVE CIVIL RIG,HTS ACTIONS IN EXCHANGE FOR
DISMISSAL OF CRIMINAL CHARGES,
      136 U. Pa. L. Rev. 851, 888-889 (1988)..........................................8

Takahashi, Ken, NOTE: THE RELEASE-DISMISSAL AGREEMENT:
AN IMPERFECT INSTRUMENT OF DISPUTE RESOLUTION,
      72 Wash. U. L. Q. 1769, 1775 (1994)..............................................7

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTIN A. OLIVER,

    Plaintiff,

v.

CITY OF BERKLEY, a Municipal
Corporation, the BERKLEY PUBLIC
SAFETY DEPARTMENT, BRUCE
HENDERLIGHT, and BRENT SMITH,
jointly and severally,

    Defendants.

No. 01-71689
HON. GEORGE CARAM STEEH
MAGISTRATE JUDGE SCHEER

_____/

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Before the Court is Defendants' Renewed Motion for Summary Judgment. Plaintiff alleges in her complaint that Defendants violated her constitutional rights, more specifically the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Defendants maintain that plaintiff signed a binding release giving up her civil rights and furthermore, that plaintiff has failed to support her §1983 claims against Henderlight with any allegations of personal wrongdoing and has similarly failed to establish the City's liability by identifying a police custom, policy or practice that deprived her of her civil rights.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to grant summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file,

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

1

together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." See FDIC v Alexander, 78 F.3d 1103, 1106 (6th Cir. 1996). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Winningham v North Am. Resources Corp., 42 F.3d 981, 984 (6th Cir. 1994) (citing Booker v Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir. 1989). The evidence and all inferences drawn therefrom must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v Zenith Radio Corp., 475 U.S. 574, 587 (1986); Enertech Elec., Inc. v. Mahoning County Comm'r, 85 F.3d 257, 259 (6th Cir. 1996).

## III.  STATEMENT OF FACTS

On May 3, 1998, Plaintiff, Kristin Oliver, accompanied by her girlfriend was followed and stopped by City of Berkley Public Safety Officer Smith for making an improper turn and missing a stop sign when she attempted to enter the parking lot of a Burger King restaurant. After stopping Kristin, Officer Smith instructed an officer who backed him up to take the girlfriend from the scene leaving him alone with Kristin, who had never been stopped by a police officer in her life and had no idea what to expect. At the scene, Officer Smith put Kristin through a multitude of "sobriety tests" unexpectedly grabbing her from behind telling her he was preventing her from falling. He conducted a very personal search of her person at the scene and then transported her to the station for booking on an OUIL despite the fact that her breathalyzer test indicated a .07 and despite the fact that such a reading of under Berkley's police department rules was the reading that allowed an officer to release a person from custody. *The supervising officer had left the station* and was reportedly "on the road" at the

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

time Smith brought Kristin in leaving Smith alone with Kristin.  Smith took full advantage of this opportunity and the fact that Berkley police department General Order No. 15 allowed him the discretion to go to whatever extent he deemed acceptable in doing a "complete search." Officer Smith repeated his "complete search" more than once finally ordering Kristin to remove her undergarment so that he could reach inside her slacks and feel her vaginal area while telling her that she was a pretty girl and if she just "cooperated" things would go alright for her. Although Kristin began shaking and crying, Smith did his "searches" unsupervised there in the station after fingerprinting and photographing Kristin  and locking her up in a cell, and finally demanding she remove her underpants which he took from her.   The City Attorney subsequently offered Kristin a plea bargain so long as she would sign a release giving up her civil rights and *"releasing the city, its officers, employees, and agents from any claims, damages or causes of action of any kind because of alleged injuries or other damage suffered by the defendant that may arise from the incident which gave rise to this case or from the prosecution of this case."*   As part of the release, the City Attorney "represents that he has investigated this case and reviewed the facts with the available witnesses..."  In fact, if the City Attorney had investigated this case and asked Kristin what had happened, he would have learned of the criminal sexual conduct of Officer Smith.  Instead, he obtained a release which Kristin signed within one month of the assault while she was still dealing with the grief and humiliation which accompanies such an occurrence along with the overwhelming desire to put it behind her.  Kristin Oliver had no prior record, no prior alcohol offenses and, in fact, her breathalyzer results did not meet the threshold for OUIL.  However, she was going through a divorce and was concerned her attorney husband would use this arrest to obtain custody of their daughter.  Almost three years after the offense, Kristin Oliver was contacted by the Oakland

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

County Prosecutor, informed that Officer Smith had sexually abused two more young women, one a juvenile, and she was asked to come forward to testify in a criminal trial against Smith. Kristin realized she could never put this matter behind her until she, too, took a stand against Officer Smith and the City that allowed such activities to happen.

## IV.  ISSUES

**A.    IS THE BLANKET RELEASE SIGNED BY PLAINTIFF ENFORCEABLE? PLAINTIFF ANSWERS "NO."**

A release must meet a more comprehensive test than voluntariness in order to be enforceable.  Town of Newton v. Rumery, 480 U.S. 386, 399 (1987).  The burden of proving the enforceability of a release/dismissal agreement lies with the proponent of the agreement. Coughlen v Coots, 5 F.3d 970, 973 (6th Cir. 1993).  Before a court properly may conclude that a particular release-dismissal agreement is enforceable, it must specifically determine that (1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests[1].  Rumery at 398 (J. Powell, plurality opinion), (J. O'Connor, concurring).

The Sixth Circuit has applied this same three-part Rumery test.  See Burke v. Johnson, 67 F.2d 276, 281 (6th Cir. 1999) (citing Rumery and Coughlen, at 974.[2] The burden of proving each of these points falls upon the party who seeks to invoke the agreement as a defense.  *A finding of voluntariness alone is not sufficient to uphold such an agreement.* Coughlen at 974,

---

[1] In Rumery, the Supreme Court drew upon the Restatement (Second) of Contracts § 178(1) (1981) to fashion its federal common-law rule that a release-dismissal agreement will be unenforceable "if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." Rumery, 480 U.S. at 392 & n.2. quoted in Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 540 (1996).
[2] The Court pointed this out in its Opinion And Order Granting In Part And Denying In Part, Defendants' Motion For Summary Judgment issued October 30, 2001 at Defendants' original Motion For Summary Judgment. (Exhibit A)

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

4

n2; Hill v. City of Cleveland, 12 F.3d 575, 578 (6th Cir. 1993). *Moreover, such agreements should be scrutinized closely in cases where substantial evidence supports an allegation of police misconduct, in view of the potential for abuse of release-dismissal agreements by law enforcement officials.* Rumery, at 394-95 (plurality opinion); *Id.* at 400 Coughlen, at 974.

Defendant City and its Chief admitted that the release dismissal agreement signed by Plaintiff Oliver is a standard form used by Berkley in 52A District Court and, that Plaintiff had to sign the release dismissal agreement "as is" as a condition of the plea bargain. Defendants cannot meet their legal burden of showing any particularized, case specific analysis of Plaintiff's case to determine whether the release/dismissal agreement at issue was enforceable and this is their burden.[3] Plaintiff testified she was afraid her arrest would negatively affect her right to obtain custody of her child which was an issue "hanging over her head" on May 3, 1998.[4] Her husband, an attorney, gave her reason to believe he was going to take action to prevent her from obtaining custody of her daughter.[5] The Plaintiff's state of mind, her fear of losing her daughter, casts strong doubts on her "voluntariness" in executing this agreement.

More importantly, the release is not enforceable because the third factor of Rumery is not satisfied: *the relevant public interests do not support enforcement.* Kinney v. City of Cleveland, 144 F. Supp. 2d 908, 918 (2001). That is, Defendants cannot possibly show they required this release because they determined that the § 1983 suit lacked merit (or that other public policies supported a release-dismissal agreement). Kinney v. City of Cleveland, 144 F.

---

[3] The pertinence of what a prosecutor should have known stems from Cain v. Darby's [7 F.3d 377 (3d Cir., 1993) (in banc), cert. denied, 510 U.S. 1195 (1994) instruction that prosecutors examine the public interests at stake "on a case-by-case basis" before concluding release-dismissal agreements. 7 F.3d at 382. Charging prosecutors with constructive knowledge of any evidence of which they should have been aware helps to ensure that a would-be plaintiff is not harmed by a prosecutor's failure to carry out this duty. Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 532, n 25.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

Supp. 2d 908, 918 (2001). In her concurrence in <u>Rumery</u>, Justice O'Connor made a point that has subsequently become the law of this circuit: "It is the burden of those relying upon such covenants to establish that the agreement is neither involuntary nor the product of an abuse of the criminal process."[6] In <u>Coughen</u>, the 6th Circuit echoed the concerns of Justice O'Connor:

> The coercive power of criminal process may be twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim of such abuse, but also of society as a whole.[7]

In <u>Friebis v. Kifer</u>, 47 Fed. Appx. 699, 702-703 (2002), (Exhibit R) 6th Circuit stressed the fact that evidence of police misconduct should factor into the analysis of a release/dismissal agreement. The evidence in this case clearly demonstrates that the City, the Chief and Smith violated Plaintiff's constitutional right of bodily integrity. Plaintiff was searched at the scene of her arrest by Brent Smith who came up behind her and grabbed her when she was not going to fall[8] He then searched her by making her place her hands on the car and spread her legs. He ran his hands up each leg, her buttocks and then up her front rib cage and breasts.[9] He then transported her to the Berkley Police Department where he "processed" her. Smith kept telling Oliver, "You're a cute girl, you're a cute girl...everything will be fine... He said I was a beautiful girl. As long as I keep cooperating like I'm doing, everything will be okay."[10] Assistant Prosecuting Attorney Lisa J. Ortlieb questioned Kristin Oliver about her experience at

---

[4]   Exhibit E, p 20-21.
[5]   Exhibit E, p 20.
[6]   480 U.S. at 399.
[7]   <u>Coughlen</u>, 5 F.3d at 973 quoting <u>Rumery</u> 480 U.S. at 400 (O'Connor J., concurring in part)).
[8]   Deposition of Kristin Adair Oliver February 4, 2002 Exhibit E p 76; Deposition on March 18, 2002 Exhibit F, pp 118-119
[9]   <u>People v Brent Smith</u>, Oakland County 01-177358-FH, Exhibit G, p 149 and p 150 ("[H]e told me that he was going to arrest me. And before, before I, before I got into the car, he told me that he had to search me. And so he put my – first he gave me a hand, a breathalyzer test, like a pocket one, and then he told me that he was going to arrest me. And he told me that he had to search me. And I was to put my hands on the roof of the car. And I had on a tight black pants and a tank top. And he went up and down each leg and my ribs and my stomach, over my

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

Smith's criminal trial.

As this court said in its earlier Opinion and Order:

Construing the pleadings and evidence in a light most favorable to plaintiff, and even assuming that plaintiff voluntarily signed the subject release and that there is an absence of evidence of prosecutorial misconduct, it remains possible for plaintiff to develop a record demonstrating that, in this particular case, the public's interest in vindicating constitutional rights and deterring police misconduct weighs in favor of permitting plaintiff's case to go forward despite the signed release. Defendants' argument that the court must focus only on those facts and allegations of police misconduct that the prosecutor know about at the time the release was executed (which appears to be nothing) is not well taken, and, at best, is properly directed at the second prosecutorial misconduct factor.[11]

Strong public policy reasons militate against enforcement of this release. Where the released claims involve meritorious claims of police brutality, the agreement presents an unreasonable risk of impairing the public interest by jeopardizing the integrity of the criminal justice process. Stamps v. City of Taylor, 218 Mich. App. 626, 635; 554 N.W.2d 603 (1996). The court should not enforce this release-dismissal agreement because there is no clear nexus between the criminal charge, O.U.I.L, and the civil claims of the plaintiff.[12] Courts should prohibit release-dismissal agreements in situations where there is no clear nexus between the impending criminal charges and the potential civil claims.[13] Moreover, the deterrent effect of § 1983 on unconstitutional activity by police officers and their departments is clearly reduced if

---

breasts and my arms."); see, too, Deposition of Kristin Adair Oliver on March 18, 2002, Exhibit F, p 118, pp 130-138, p 141

[10] People v Brent Smith, Oakland County 01-177388-FH, Exhibit G, p 159.

[11] Opinion And Order Granting In Part, And Denying In Part, Defendants' Motion For Summary Judgment dated October 30, 2001, Exhibit A, p5-6.

[12] Plaintiff's case is factually opposite to the reasoning utilized by the Sixth Circuit in upholding a release/dismissal agreement in Hill v. City of Cleveland, 12 F.3d 575, 579 (6th Cir., 1993) ("For the reasons we have indicated--the failure of the state court to reach a decision on the merits, the conflicting and adversarial positions taken by the parties on the proof, the connection between the civil rights action and the criminal charges, the lack of prosecutorial overreaching, as well as the nature of the charges brought--we are satisfied that the public interest is served here in holding that the agreement between the parties constitutes a bar to the plaintiff's suit.") (emphasis added)

[13] Ken Takahashi, NOTE: THE RELEASE-DISMISSAL AGREEMENT: AN IMPERFECT INSTRUMENT OF DISPUTE RESOLUTION, 72 Wash. U. L. Q. 1769, 1775 (1994).

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

vindication of constitutional rights takes the form of dismissal or modification of criminal charges in exchange for the release of all potential civil claims against the officers and the department.

> §1983 provides a cause of action to "any person" deprived of rights, privileges, or immunities. This right is not limited to "innocent" citizens. Although juries may implicitly impose a "clean hands" requirement on civil rights plaintiffs, there has never been any legal warrant for doing so. To allow local prosecutors the discretion to attempt to bar federal civil rights actions when the plaintiff's conduct falls below an idiosyncratic standard of "innocence" both shifts the decision making from civil courts and juries to criminal prosecutors and distorts the substantive standards applied. A guilty criminal suspect is as fully capable of finding herself subjected to violations of her constitutional rights during the course of an arrest as an innocent one, and the purposes of section 1983 include providing a means of redressing such violations. It is not adequate to argue that although the violation has occurred, the victim is also guilty of misconduct as well. When justice requires a criminal conviction and civil redress, a practice that results in neither is rough indeed. Moreover, the effort to seek criminal convictions as a means of suppressing civil rights claims may well violate the first amendment's guarantee of the right to petition for redress of grievances.[14]

Accordingly, because this release encroaches on the strong public policy of discovering and rectifying meritorious claims of police brutality, i.e., the unconstitutional invasion of a woman's right to bodily integrity[15], it should not be enforced.

**B.**  **WHETHER THE CITY OF BERKLEY AND CHIEF BRUCE HENDERLIGHT CAN BE HELD LIABLE FOR THE ALLEGED DEPRIVATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS OF PRIVACY AND FREEDOM FROM ILLEGAL SEARCH UNDER THE FOURTH AMENDMENT?**

**PLAINTIFF ANSWERS YES.**

A local government may be held liable under §1983 only for its own unconstitutional or illegal policies or customs.  Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (1994) (citing

---

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

[14] Seth F. Kreimer, ARTICLE: RELEASES, REDRESS, AND POLICE MISCONDUCT: REFLECTIONS ON AGREEMENTS TO WAIVE CIVIL RIG,HTS ACTIONS IN EXCHANGE FOR DISMISSAL OF CRIMINAL CHARGES, 136 U. Pa. L. Rev. 851, 888-889 (1988).
[15] In  Kallstrom v. City of Columbus, 136 F.3d 1055, 1062-63 (1998) the Sixth Circuit noted that "individuals have 'a clearly established right under the substantive component of the Due Process Clause to personal security

Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978)). A plaintiff must show that a government *policy* actually caused the injury sustained. Gazette, 41 F.3d at 1067; Monell, 436 U.S. at 694 (holding "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983.").

The *sine qua non* cause and moving force that made possible the sexual assaults on Plaintiff was the mandatory search policy in General Order No. 15 requiring a "complete" search of any person placed into a detention cell.[16] "While the specific episode may be perpetrated by one or more persons, any underlying conditions that may have caused it or made it possible are the product of the city's policy, action, or inaction." Scott v. Moore, 114 F.3d 51, 54 (CA 5, 1997). The proofs show Berkley's policy, which required a "complete" search of any person placed into a cell without any other indicia or reasonable suspicion such person possesses either a weapon or contraband, was an unmistakable violation of both of the Plaintiff's constitutional rights to (1) bodily integrity under the due process clause of the U.S. Const. amend XIV and (2) to be free from unreasonable searches under amend IV and hence are actionable under 42 U.S.C.S. § 1983. There is "a direct causal link" between this "complete search" municipal policy and the constitutional deprivations visited upon the Plaintiff in this case. Doe v. Claiborne County, 103 F.3d 495, 508 (6th Cir. 1996); Robinson v. Twp. of Redford, 48 Fed. Appx. 925, 928 (2002). Plaintiff's sexual molestation occurred because the City established a policy requiring a "complete" search without defining what comprised a complete search, without training Officer Smith and without any protections for females who

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

---

and to bodily integrity,' and this right is fundamental where 'the magnitude of the liberty deprivation that [the] abuse inflicts upon the victim . . . strips the very essence of personhood.'"
[16] See Exhibit H.

were routinely searched by male officers who have all testified that the definition of "complete" *was left to their own individual discretion.* It was clearly established law in the Sixth Circuit as early as 1986 that strip searches of pre-trial detainees arrested for traffic misdemeanors such as OUIL without any further probable cause were unconstitutional. The decisions of all the federal courts of appeals that have considered the issue reached the same conclusion. The right of a pre-trial detainee arrested for drunk driving to be free of such a search was "clearly established" in the Sixth Circuit on October 21, 1986. Masters v. Crouch, 872 F.2d 1248, 1257 (CA 6, 1989), cert. denied *sub nom* Frey v Masters, 4983 US 977; 110 S Ct 503; 107 L Ed 2d 506 (1989). Public officials are expected to be aware of clearly established law specifically governing their conduct. Long v Norris, 929 F2d 1111, 1115 (CA 6, 1991) cert. denied *sub nom*, Jones v Long, 502 US 863 (1991).

Here there is unambiguous evidence that the policy requiring a "complete" search of any person placed into a cell and the failure to supervise and train Brent Smith constituted deliberate indifference by the City and the Chief.[17] The Chief and the City both had a ministerial[18] duty to supervise and train. These Defendants' deliberate indifference to their ministerial duty to protect the clearly established rights of Plaintiff was a direct and proximate cause of Plaintiff's injuries.[19]

---

[17] Redmond v. Baxley, 475 F. Supp. 1111, 1118 (E.D. Mich. 1979) (noting that "deliberate indifference may involve taking risks, rather than intending results," and citing approvingly other district court opinions equating deliberate indifference with wantonness, recklessness, or gross negligence) (emphasis added), cited with approval in Hubert v. Brown, 1997 U.S. App. LEXIS 11025, p 20.

[18] A ministerial act is defined as "one in which a person performs in a given statement of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of his own judgment upon the propriety of acts being done." Manion v. Michigan Bd. of Medicine, 765 F.2d 590, 594 n1 (6th Cir., 1985), rev'd on other grounds, Watts v. Burkhart, 978 F.2d 269 (1992), citing Adden v. Middlebrooks, 688 F.2d 1147, 1152 (7th Cir., 1982).

[19] Dufrin v. Spreen, 712 F.2d 1084, 1088 (1983) (" Dufrin points out that the sheriff department's strip-search policy applied to all female detainees regardless of the crimes with which they were charged. Dufrin has cited several cases to this court in which blanket strip-search policies have been held unconstitutional. *See, e.g., Logan v.*

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

The City and the Chief were on notice that unwitnessed one-on-one contacts between male officers and female prisoners such as Plaintiff were fraught with the potential for sexual abuse. In <u>Mary M. v. City of Los Angeles</u>, 54 Cal. 3d 202, 217-218 (1991), the California Supreme Court noted that the risk of such assaultive conduct is "broadly incidental to the enterprise of law enforcement:

> [S]ociety has granted police officers great power and control over criminal suspects. Officers may detain such persons at gunpoint, place them in handcuffs, remove them from their residences, order them into police cars and, in some circumstances, may even use deadly force. The law permits police officers to ensure their own safety by frisking persons they have detained, thereby subjecting detainees to a form of nonconsensual touching ordinarily deemed highly offensive in our society. (Terry v. Ohio (1968) 392 U.S. 1.) In view of the considerable power and authority that police officers possess, it is neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct. The precise circumstances of the assault need not be anticipated, so long as the risk is one that is reasonably foreseeable. Sexual assaults by police officers are fortunately uncommon; nevertheless, the risk of such tortious conduct is broadly incidental to the enterprise of law enforcement...

The California Supreme Court further noted:

> It was established at the trial that the Los Angeles Police Department has a policy... which requires officers on duty who transport persons of the opposite sex to report the time and the mileage on the vehicle's odometer before and after the trip. The existence of such a policy suggests that the department considers it neither startling nor unexpected that its officers might engage in, or be accused of, sexually assaultive conduct. 54 Cal. 3d at 218, n 10.

Berkley has a rule identical to California regarding transporting females requiring time and mileage to be called into the station. Defendants can not, on one hand, acknowledge the obvious risk of sexually assaultive behavior where they have an identical rule mandating their officers on duty who transport persons of the opposite sex to report the time and mileage on the

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

<u>Shealy</u>, 660 F.2d 1007 (4th Cir. 1981), <i>cert. denied, sub nom.</i> <u>Clements v. Logan</u>, 455 U.S. 942, 71 L. Ed. 2d 653, 102 S. Ct. 1435 (1982); <u>Tinetti v. Wittke</u>, 479 F. Supp. 486 (E.D. Wis. 1979), <i>aff'd,</i> 620 F.2d 160 (7th Cir. 1980) (per curiam). Review of the strip-search cases cited by Dufrin reveals that they have invariably involved

11

vehicle's odometer, and, on the other hand, claim they had no such awareness of the identical risks by mandating a "complete search" of a female by a male officer without requiring at least a witness to the search. The failure of the City to develop and enforce an appropriate policy and procedure regarding searches of female detainees while recognizing the need to protect females by requiring male officers to call in time and mileage when transporting a female to the station is strong evidence of deliberate indifference. The Supreme Court stated the rule in <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1977):

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Henderlight set policy for Berkley police officers.[20] General Order No. 15 was in effect in May, 1998.[21] Henderlight acknowledged that it is important for a police officer to be fully aware of what the officer can, and cannot, do for the safety of the officer *and of the prisoner*.[22] Henderlight did not recall explaining to Brent Smith what a "complete search" is.[23] Henderlight further testified there should only have been one search in the station but this was not specified in any policy. Henderlight claims it was just "understood" that female officers from other departments were available to search females.[24] However, Henderlight admitted he doesn't know how this "understanding" was communicated to Brent Smith.[25] Henderlight further testified it would not be uncommon for a supervisor to be on the street *and not in the station*

---

misdemeanors, traffic offenses, or similar minor offenses not normally associated with weapons or contraband. *See, e.g., Logan, supra,* (driving while intoxicated)" (emphasis added).
[20] Henderlight Deposition August 8, 2002, Exhibit I, p 8.
[21] <u>Id.</u> at p 22.
[22] <u>Id.</u> at p 24.
[23] <u>Id.</u> at p 28.
[24] <u>Id.</u> at pp 34-35.
[25] <u>Id.</u> at p 35.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

12

when an officer brings in a detainee for processing!

Henderlight admitted the reason for wanting a female present for the search of a female "is to insure there's nothing inappropriate going on."[26] "The more [persons] who are present, the less likely there'll be a problem."[27] Plaintiff's experts have opined that the City was in violation of acceptable police procedures in failing to have a policy. (Exhibits B & C) Clearly the City recognized the potential for abuse. They just failed to do anything about it. Henderlight admitted the Order does not define "a complete search".[28]

By promulgating this overly broad and unconstitutional rule requiring an undefined "complete search" the City and its Chief created a very real threat to the personal security and bodily integrity of every female apprehended in Berkley. There is no excuse for this situation in view of the clear and unambiguous ministerial duty of the City and the Chief to adhere to the clearly established rule in the Sixth Circuit as early as 1986.

In <u>Kallstrom v. City of Columbus</u>, 136 F.3d 1055, 1062-1063 (6th Cir. February 12, 1998), the 6th Circuit recognized the fundamental right of bodily integrity. "[I]ndividuals have 'a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity,' and this right is fundamental where 'the magnitude of the liberty deprivation that [the] abuse inflicts upon the victim . . . strips the very essence of personhood.'" <u>Kallstrom</u>, 136 F.3d at 1062-63 (quoting <u>Doe v. Claiborne County</u>, 103 F.3d 495, 507 (6th Cir. 1996). In <u>Doe</u>, 103 F.3d at 507, the court stated the right to personal security and to bodily integrity under the Due Process Clause encompasses the right not be sexually assaulted by a government actor. In <u>DeShaney v. Winnebago County Dep't of Social Services</u>,

---

[26] <u>Id.</u> at p 40.
[27] <u>Id.</u> at p 42.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

489 U.S. 189 (1989), The Supreme Court said "when the State takes a person into its custody and holds him there against his will," the Constitution imposes some responsibility upon the state for the person's "safety and well-being." _Id._ at 199-200. Generally, there is no "affirmative duty on the government to provide for a person's safety, unless the government has restrained that individual through 'incarceration, institutionalization, or other similar restraint of personal liberty.'" Walton v. City of Southfield, 995 F.2d 1331, 1337 (1993) (citing DeShaney, 489 U.S. at 200) (emphasis added). The restraint of personal liberty creates a "special relationship" between the state and the citizen in custody. A special relationship triggers the state's duty to protect the citizen. Gazette v. City of Pontiac, 41 F.3d at 1065.

In Gibson v. City of Clarksville, 860 F. Supp. 450, 457-458 (1993), the Court concluded that, as the City's decision maker on such matters, the chief's actions and inactions can impose § 1983 liability upon the City. Both the City and the Chief are directly liable for their deliberate indifference in imposing General Order 15's obligation on Berkley officers to conduct a "complete search" in view of the state of the law in the 6th Circuit as early as 1986. Their liability is based on their direct ministerial duty to comport with the law, their police department rules and regulations, and to train their officers to follow the clear dictates of the law.

> Just as the existence of a constitutional right must be the threshold determination in any section 1983 claim, the finding of a custom or policy is the initial determination to be made in any municipal liability claim. If a plaintiff advances sufficient evidence to create a genuine issue of material fact as to the existence of such custom or policy, then the question of "deliberate indifference" is one for the jury to decide and not for the court at the summary judgment stage. Doe v. Claiborne County, 103 F.3d 495, 509 (1996), see too, Hicks v Frey, 992 F.2d 1450, 1456-57 (6th Cir. 1993).

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

---

[28] Id, at p 91 ('Q. (Ms. McNeilage) Does General Order No. 15 define the terminology "a complete search", yes or no? A. (THE WITNESS) No.')

14

**C.   WHETHER DIRECTOR OF PUBLIC SAFETY BRUCE HENDERLIGHT IS
ENTITLED TO THE PROTECTION OF THE DOCTRINE OF QUALIFIED
IMMUNITY FROM CIVIL DAMAGES LIABILITY FOR ALLEGED
VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS?**

**PLAINTIFF ANSWERS NO.**

A policy or custom of failing to train staff to respect the constitutional rights of citizens
can justify liability. City of Canton v. Harris, 489 U.S. 378, 392, 103 L. Ed. 2d 412, 109 S. Ct.
1197 (1989).   Birmingham v. Gonzales, 1998 U.S. Dist. LEXIS 1778.  The Court thus held that
inadequate police training may serve as a basis for liability under § 1983 "only where the failure
to train amounts to deliberate indifference to the rights of persons with whom the police come
into contact." Id. at 388.[29]

> [I]t may happen that in light of the duties assigned to specific officers or employees the
> need for more or different training is so obvious, and the inadequacy so likely to result
> in the violation of constitutional rights, that the policymakers of the city can reasonably
> be said to have been deliberately indifferent to the need.  Canton v Harris, 489 U.S. 378
> (1989).

> **Defendants claim there is no evidence the chief took any inappropriate or
> unreasonable action with respect to Smith and that there is no evidence to
> support plaintiffs claims of lack of training or supervision.   On the
> contrary, the testimony is abundant and consistent about the lack of
> training and supervision that pervaded the Berkley Police Department
> under Chief Henderlight's reign.**

Brent Smith has testified that although there was a Field Training Officer program in
effect before he was hired at Berkley, and although such a program was re-established after he
got there, he "slipped in between" and had no such training.  He explained that such training
would be where you would ride around with officers senior to you who had been trained and

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

---

[29]   In following City of Canton, the Sixth Circuit has recognized that a plaintiff must prove three distinct elements
to establish a city's section 1983 liability due to inadequate police training: 1) the training program is inadequate to
the tasks that the officers must perform; 2) the inadequacy is the result of the city's deliberate indifference; 3) the
inadequacy "actually caused" or is closely related to plaintiff's injuries. Hill v. McIntyre, 884 F.2d 271, 275 (6th
Cir. 1989).

certified (as training officers), and they would teach you the policies and procedures of the department.[30]  Smith testified that he has never been through a field training program[31] and Chief Henderlight never explained to him what Berkley meant by a complete search.[32]  Additionally, Smith testified that no one at Berkley ever taught him exactly when he was supposed to make an attempt to get a female officer there for a search[33] (21) and it was totally *up to his discretion* to decide how "complete" to be in a complete search.[34]  When questioned how he knew under what circumstances to make an attempt to get a female there for a search of a female, Smith answered, "I guess I really didn't."[35]  Smith admitted "I was given so little explanation, that there was potential for abuse."[36]  (22)  He testified that when he worked in Meridian Township, they had a very clear definition and very strict policies about what was done and it was never a problem.[37]  In Meridian, females searched females, period.  If a male had to search a female, there had to be a supervisor present.[38]

In addition to testifying there was no training by certified field training officers and no clear explanation of an unclear policy, Smith testified there was no policy about the use of the surveillance camera installed in the booking area and maintenance of surveillance tapes because Chief Henderlight never got around to drafting a policy on this issue.[39]  Officers have testified that Chief Henderlight failed to supervise what was going on in the department.  As Smith said, "Compared to East Lansing and Meridian Township, Berkley was extremely loose in the way

---

[30]   Brent Smith deposition September 20, 2002, Exhibit J, p 20
[31]   Id.
[32]   Id. at p 21.
[33]   Id. at p 21.
[34]   Id.
[35]   Id.
[36]   Id. at p 22.
[37]   Id. at p 23.
[38]   Id.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

they dealt with most things."[40] Smith admitted in testimony that officers would view porno movies while on duty[41], police officers would visit porno websites on the computer in the station,[42] and on a slow night officers would hang out at the station, play video games and watch movies.[43] Officer Northdurft confirmed that some officers on the midnight shift would pull up websites on the computer...even command officers such as Lt. Mike Tuzinski.[44]

Officer Gregory Betts confirmed Smith's testimony about lack of training. He testified there was no training by a supervisor in Berkley.[45] Officer William Alford also testified he had no training in Berkley.[46] Officer James Ellis testified that the officer in charge of the shift when Kristin Oliver was in the station, *was not actually in the station*, but the log reflects he was "on the road."[47] Ellis also confirmed that there was no training in Berkley and no actual officers were ever assigned to train him...just "hands on" experience.[48] [This "hands on" comment is ironic in this case] Officer Robert Ginther testified he "picked up" certain procedures from other officers.[49] That he may follow certain procedures while other officers may follow others.[50] He, like the other officers, admitted that Chief Henderlight never verbalized to him what a complete search is.[51] *His search would depend on his own "comfort level."*[52]

Chief Henderlight was characterized in a cartoon posed on the department bulletin board which shows him as a little man in a big coat with his eyes covered by his hat saying, "I

---

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

[39] Id. at p 30.
[40] Id. at p 79.
[41] Id. at p 90.
[42] Id. at p 113.
[43] Id. at p 77.
[44] Northdurft deposition transcript, Exhibit K, p 59.
[45] Gregory Betts deposition transcript, Exhibit L, p 19.
[46] William Alford deposition transcript, Exhibit M, p 16.
[47] James Ellis deposition transcript, Exhibit N, p 29.
[48] Id. at p 83.
[49] Robert Ginther deposition transcript, Exhibit O, p 24.
[50] Id.

see noth-ink." (Exhibit D) Officer Northdurft testified that officers did notice oddities about Brent Smith before the Kristin Oliver incident. He admitted that in a group setting other officers would talk about the fact that Brent Smith like to shine lovers in cars.[53] Brett Smith would get a surly attitude.[54] Brett Smith made decisions a lot of the guys didn't want necessarily to be associated with.[55] That he observed problems with Smith's "discretion" and reported them to the Sergeant (Hella) in charge on that date.[56] *He told Sergeant Hella that command should talk with Smith about these issues.* There is no evidence command did so. Northdurf testified that stories circulated in the Department that maybe Smith spent time talking to groups of teenage girls while he was on duty.[57] (20) Smith would wave away assistance on OUIL stops and this was very unusual for an officer not to want help on an OUIL arrest.[58] Northdurf admitted that the citizen complaint procedure was ignored when a command officer would tell people to come back later to speak to the detective when the command officer did not want to take a written statement.[59] He also testified that he found it strange that the other police officers were never asked anything about what they knew relative to the investigation of Smith[60] and he actually questioned Berkley's resolve to find the truth.[61]

It is ludicrous for the City to claim this case lacks evidence of failure to train and failure to supervise which can be placed squarely at the door of the Chief and the City! This failure to train (or to supervise or discipline) is so extreme as to amount to "deliberate indifference" to the

---

[51] Id. at p 37.
[52] Id. at p 48.
[53] Id. at p 19.
[54] Id. at p 15.
[55] Id. at p 14.
[56] Id. at p 13.
[57] Id. at p 20.
[58] Id. at p 23.
[59] Id. at p 53.
[60] Id. at p 58.

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

18

rights of citizens. By failing to train officers on what he meant by a "complete search" Henderlight created the opportunity for his officers to use a wide range of "discretion" which discretion was exercised by Smith in such a way to include criminal sexual conduct under the guise of a "complete search." Plaintiff's claim is not one of vicarious liability, but of direct liability based upon a flawed policy, a disengaged Chief and a City which attempts to evade its violations by eliminating civil rights with the stroke of a pen! The Berkley Police Department left it up to the *individual officer's discretion* to have a witness present when searching a female.[62] Officer Gregory Betts testified he didn't know if General Order No. 15 prohibits him from touching a female's breasts or pelvic area.[63] Officer William Alford testified a male officer could watch a female using the bathroom in the detention area.[64] The order does not prohibit him from searching the groin area or the breast area of either a male or female prisoner who is being placed into a cell.[65] Detective Anger testified the order does not define what a complete search is.[66] He admitted no training was given on this issue.[67] Detective Anger testified that giving an officer some discretion can have the potential to lead to abuse.[68] The wide variance in interpretation of "complete search" by Berkley police officers, shows an abject lack of any training ever having taken place regarding this rule. The Chief was the policy maker responsible for this rule. *A rule which allows those charged with its enforcement to interpret how the rule is to be applied is no rule at all.* An official policy can be inferred from a municipality's omissions as well as from its acts. <u>Avery v. County of Burke</u>, 660 F.2d 111,

---

[61] <u>Id.</u>
[62] <u>Id.</u> at p 18.
[63] Deposition transcript of Gregory Betts, Exhibit L, p 29.
[64] Deposition transcript of William Alford, Exhibit M, p 55.
[65] <u>Id.</u> at p 54.
[66] Deposition transcript of Detective Anger, Exhibit P, p 34.
[67] <u>Id.</u> at p 46.
[68] <u>Id.</u> at p 53.

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

19

114 (4th Cir. 1981); Turpin v. Mailet, 619 F.2d 196, 202  (2d Cir. 1980), cert. denied, 449 U.S. 1016, 101 S. Ct. 577, 66 L. Ed. 2d 475 (1980); Withers v. Levine, 615 F.2d 158, 161 (4th Cir. 1980), cert. denied, 449 U.S. 849, 66 L. Ed. 2d 59, 101 S. Ct. 136 (1980).  When the facts of this case are analyzed in light of both the Supreme Court in Wolfish as well as the 6th Circuit's decisions in Dufrin v Spreen, 712 F2d 1084 (CA 6, 1983) it is clear that a reasonable juror could  find that this "complete search" policy was in violation of Plaintiff's constitutional rights.  Clemons v Morris, 830 F2d 193; 1987 US App LEXIS 13025, p 10.  Since it is clear that the Chief possessed final authority to establish and implement municipal policy including General Order No. 15 it is unnecessary to establish knowledge of these policies on the part of the City to find municipal accountability.  Pembaur v. City of  Cincinnati, 475 US 469 (1986), Clemons, p 11. [W]hen an authorized decision-maker adopts a particular course of action, such a  decision represents an official policy of that governmental entity. Pembaur v. City of Cincinnati, 475 U.S. 469, at 481, (1986); Humes v. Gilless, 154 F. Supp. 2d 1353,  1363 (2001).

When a plaintiff advances sufficient evidence to create a genuine issue of material fact as to the existence of such custom or policy, then the question of "deliberate indifference" is one for the jury to decide and not for the court at the summary judgment stage.  Doe v. Claiborne County, 103 F.3d 495,  509 (1996), Hicks v. Frey, 992 F.2d 1450, 1456-57 (6th Cir. 1993).   In evaluating a qualified immunity contention, the Supreme Court in Wood v. Strickland, 420 U.S. 308, 321-22, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975), set forth a two-part test to determine the availability of the  qualified immunity defense. This two-part test was explained later in Procunier v Navarette, 434 U.S. 555, 562 (1978):

Under the first part of the Wood v. Strickland rule, the immunity defense would be

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

20

unavailing to petitioners if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm.

The test for determining whether an official is entitled to qualified immunity "is one of 'objective reasonableness,' which requires 'a reasonably competent public official to know the law governing his conduct.'" Foy v. City of Berea, 58 F.3d 227, 233 (1995) citing Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Plaintiff has presented facts which, if true, would constitute a violation of clearly established law regarding the extent detainees can be searched. The direct cause of Plaintiff's injuries was the "complete search" requirement of General Order No. 15 and the Chief's failure to modify this rule in view of the clearly established law regarding such searches as set forth in Masters v. Crouch, 872 F.2d 1248, 1257 (CA 6, 1989), cert. denied *sub nom* Frey v Masters, 4983 US 977 (1989).

**D.   WHETHER THE CITY OF BERKLEY, THE BERKLEY DEPARTMENT OF PUBLIC SAFETY, AND DIRECTOR OF PUBLIC SAFETY BRUCE HENDERLIGHT, CAN BE HELD LIABLE TO PLAINTIFF FOR ALLEGED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER STATE TORT LAW.**

**PLAINTIFF ANSWERS YES.**

Although the Supreme Court has not ruled on the issue of the existence of this tort, the Court of Appeals has found that this tort is a duly recognized cause of action in Michigan. Until the Supreme Court decides otherwise, this tort exists. In Holmes v Allstate Insurance Company, 199 Mich App 710, 326 NW2d 616 (1982) the Court pointed out that although there has been confusion regarding a cause of action for intentional infliction of emotional distress, as distinguished from damages for mental anguish incident to an independent tort, and the Michigan Supreme Court has not ruled on this issue, the Michigan Court of Appeals has

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

delineated intentional infliction of emotional distress as a separate cause of action which is not necessarily parasitic to another cause of action as an aggravating element of damages. Mosley v Federal Dep't Stores, Inc. 85 Mich App 333, 338, 271 NW2d 224 (1978). See also, Ross v Burns, 612 F2d 271 (CA 6, 1980). The Court has explicitly adopted the definition found in the *Restatement of the Law, Torts*, 2d section 46, pp. 71-72, which provides: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm…" Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Warren v June's Mobile Home Village & Sales, Inc., 66 Mich App 386, 390, 239 NW2d 380 (1976); Frishett v State Farm Mutual Automobile Ins Co., 3 Mich App 688, 692, 143 MW2d 612 (1966, lv. den. 378 Mich 733 (1966). In defining the types of situations where these rules may be applied, the Warren Court explained:

> "The extreme and outrageous character of a defendant's conduct may arise in a number of situations. It may occur by virtue of an abuse by defendant of a relationship which puts him in a position of actual or apparent authority over plaintiff or gives defendant power to affect plaintiff's interests. The tort may arise where defendant acts notwithstanding the knowledge that plaintiff is peculiarly susceptible to emotional distress because of the defendant's actions."

This is precisely the type of situation described by the Warren Court. The Chief and officers were in a position of actual or apparent authority which gave them tremendous power to affect plaintiff's interests. Yet, the Chief gave no direction in how to interpret the words "complete search", no training in how to conduct such a search on females and developed no clear policy to protect females. Each officer who testified had a different "interpretation" of

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

how far they could go.  Every officer testified it was left *to his own discretion*.  It is outrageous to think that on such an important right as bodily integrity, females arrested in Berkley could be subjected to such humiliation as being watched urinating in the bathroom, being ordered to remove private undergarments to hand them over to a male officer and being groped in the vaginal and breast area.  The lack of a clear policy created an opportunity to abuse - a situation that is utterly intolerable in a civilized community.  This is not a mere insult or petty triviality. If the public knew that the officers were sent out untrained with no definition of complete search and were allowed to stop and search females including juvenile females with no witness or female assist present, every father, husband, brother and boyfriend of a woman in that city would exclaim "Outrageous!"   The recitation of these facts to an average member of the community would arouse his resentment against the actor who formulated, allowed and condoned such activity to take place and that actor in this case is Chief Henderlight and the City of Berkley.

In <u>Roberts v Auto Owners Insurance Company</u>, 422 Mich 594, 374 NW2d 905 (1985) although declining to opine on the issue whether this modern tort should be formally adopted into our jurisprudence, the Supreme Court did set out the four elements necessary to make out a prima facie case of intentional infliction of emotional distress: extreme and outrageous conduct; intent or recklessness; causation; and severe emotional distress.  It was extreme and outrageous conduct of Chief Henderlight and his City to fail to provide funds or opportunities to field train their officers and in particular, to let Brett Smith "fall through the cracks" and go out on the streets without training and with no clear explanation of what was condoned in doing a "complete search."  Allowing male officers alone in the station with no supervisor present to "search" females using their individual "discretion" is an accident waiting to happen.  Every

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

police department across this nation has recognized the need to have protections in place for female detainees. Two experts in this case have written extensive reports repudiating the lack of polices, training and supervision in Berkley. Henderlight has testified he was the chief policy maker for the department. Whether through intent or recklessness, year after year, Chief Henderlight failed to define this policy until the inevitable happened and three young women ended up sexually abused by one of his officers. There is no doubt that the failure to train and to have an acceptable policy caused this abuse. Brett Smith himself has testified that "I was given so little explanation there was the potential for abuse." Finally, severe emotional distress is evidenced in this case. Kristin has had extensive professional help to deal with the sexual abuse. She, like many rape victims, concealed what happened from all but her closest confidants, her mother, a girlfriend, the girlfriend's mother. She felt dirty. She felt violated. She cried and experienced shame. She wanted to put it all behind her and tried hard to forget what had happened. Yet, years later, when her friend working in the prosecutors office, overheard another young woman's similar story and realized it was the same officer, she started to cry remembering the events a terrified Kristin Oliver had related to her two years previously. Sexual abuse by a police officer using his position of authority and wearing a gun is every bit as terrifying as sexual abuse by a priest using his lofty position and wearing a cross. Truly, all the elements of this tort are met in this case.

It is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress. Sawabini, D.O. v Desenberg, 143 Mich App 373, 372 NW 2d 559 (1985) In making such a determination, the court should consider the circumstances involved. See also Margita v Diamond Mortgage Corporation, 159 Mich App 181, 406 NW2d 268 (1987); Deitz

LAW OFFICES
KEPES, WINE &
MCNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

24

v Wometco West Michigan TV, 160 Mich App 367, 407 NW2d 649 (1987).  Plaintiff has accumulated hundreds of pages of sworn testimony which support plaintiff's claims of intentional infliction of emotional distress.  At the very least, they create a question of fact which precludes summary disposition.

### V.  CONCLUSION

Plaintiff has identified the policy, connected the policy to the City itself and shown that the particular injury was incurred because of the execution of the policy.  These are the requirements established in the 6th Circuit for municipality liability under §1983.  Garner v Memphis Police Dept., 8 F.3d 358,364 (6th Cir. 1993).  See also Gayles v City of Detroit, Case # 01-60038, Hon. Marianne O. Battani.  (Exhibit Q)

### VI.  RELIEF REQUESTED

**WHEREFORE,**  Plaintiff respectfully asks that this Court **DENY** the relief sought by Defendants.

KEPES, WINE & McNEILAGE, P.C.

By:  _Carol A. McNeilage_

CAROL A. McNEILAGE (P28084)
JOSEPH P. McCARROLL (P28083)
Attorneys for Plaintiff

DATED:  February 4, 2003

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTIN A. OLIVER,

        Plaintiff,

v.

CITY OF BERKLEY, a Municipal
Corporation, the BERKLEY PUBLIC
SAFETY DEPARTMENT, BRUCE
HENDERLIGHT, and BRENT SMITH,
jointly and severally,

        Defendants.

No. 01-71689
HON. GEORGE CARAM STEEH
MAGISTRATE JUDGE SCHEER

---

**CAROL A. McNEILAGE (P28084)**
**JOSEPH P. McCARROLL (P28083)**
Attorneys for Plaintiff
27200 Lahser Road
Suite 200
P.O. Box 2207
Southfield, MI 48037-2207
(248)358-5180

**JAMES I. DeGRAZIA (P22853)**
Attorney for Defs. City of Berkley,
Berkley Public Safety Department
and Bruce Henderlight, only
411 Andover Road, Suite 300E
Bloomfield Hills, MI 48302
(248) 433-2000

**MICHAEL D. RITENOUR (P32485)**
Attorney for Def. Brent Smith
400 Galleria Office Centre
Suite 550
Southfield, MI 48034
(248) 353-4450

---

## PROOF OF SERVICE

    LISA LEFEVRE states that on February 4, 2003, she served a copy of the following documents upon all counsel of record by placing said documents in envelopes addressed as above and depositing same with the U.S. Postal Service:

- PLAINTIFF'S EX-PARTE APPLICATION FOR PERMISSION TO FILE BRIEF IN EXCESS OF 20 PAGES;

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

- ORDER GRANTING PLAINTIFF PERMISSION TO FILE BRIEF IN EXCESS OF 20 PAGES;

- PLAINTIFF'S RESPONSE TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT;

- BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; and

- PROOF OF SERVICE.

LISA LEFEVRE

LAW OFFICES
KEPES, WINE &
McNEILAGE, P.C.
27200 LAHSER ROAD
SUITE 200
P.O. BOX 2207
SOUTHFIELD, MI 48037

(248) 358-5180
FAX (248) 352-5490

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED